UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

AVA SEARFOSS,

                Plaintiff,

v.                                                 Case No.  5:04-cv-170-Oc-10GRJ

JO ANNE B. BARNHART,
Commissioner of Social Security,

                Defendant.
_____/

## **REPORT AND RECOMMENDATION**[1]

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 10), and both parties have filed briefs outlining their respective positions. (Docs. 15 & 18.)[2] For the reasons discussed below, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

## **I. PROCEDURAL HISTORY**

Plaintiff filed an application for Supplemental Security Income (SSI) benefits on December 28, 1999, alleging a disability onset date of December 18, 1998. (R. 46.)

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. §636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] Plaintiff filed a 27-page memorandum of law without prior permission from the Court in violation of Local Rule 3.01(c). Absent approximately one page of argument, the memorandum is comprised of generic legal standards applied in social security cases, the definition of pain provided by the *Merck Manual*, and a word-for-word reiteration of the ALJ's opinion and Plaintiff's testimony at the hearing. Counsel should note that the Court is empowered to strike such documents *sua sponte*, and he should also recognize that the memorandum on appeal presents his client's best opportunity to persuade the Court that the case should be remanded or that the claimant should be awarded benefits.

Plaintiff's application was denied initially (R. 36), and upon reconsideration. (R. 39.) Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ").

The ALJ conducted Plaintiff's administrative hearing on May 22, 2001. (R. 276 - 278.) Plaintiff was represented by legal counsel at the hearing. The ALJ issued a decision unfavorable to Plaintiff on June 4, 2001 (R. 15 - 21), and Plaintiff timely filed a request for review of the hearing decision with the Social Security Administration's Office of Hearings and Appeals. The Appeals Council denied Plaintiff's request for review on February 13, 2002 (R. 7), making the hearing decision the final decision of the Commissioner. On May 3, 2004, Plaintiff timely filed[3] the instant appeal to this Court. (Doc. 1.)

## II.  ISSUES PRESENTED

Plaintiff raises only one issue on appeal: "whether substantial competent evidence exists to support the Defendant's rejection of Searfoss' [sic] testimony with regard to her having too much subjective pain to work."[4] Plaintiff maintains that the ALJ erred by rejecting her pain testimony for lack of credibility.

In response, Defendant argues that the ALJ's rejection of Plaintiff's subjective complaints of debilitating pain was supported by explicit and adequate reasons.

---

[3] The Appeals Council granted Plaintiff's request for an extension of time to file a civil action because Plaintiff did not receive the Appeal Council's denial of her request for review dated February 13, 2002. (R. 5.)

[4] Plaintiff's memorandum, Doc. 15, p 17.

2

### III. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[5] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[6]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[7] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[8] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[9]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be

---

[5] *See* 42 U.S.C. § 405(g).

[6] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[7] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[8] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[9] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[10] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[11]

The ALJ must follow five steps in evaluating a claim of disability.[12] First, if a claimant is working at a substantial gainful activity, she is not disabled.[13] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[14] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[15] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[16] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[17]

---

[10] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[11] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[12] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[13] 20 C.F.R. § 404.1520(b).

[14] 20 C.F.R. § 404.1520(c).

[15] 20 C.F.R. § 404.1520(d).

[16] 20 C.F.R. § 404.1520(e).

[17] 20 C.F.R. § 404.1520(f).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[18] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[19] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[20]

However, the ALJ should not exclusively rely on the grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[21] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[22]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy

---

[18] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[19] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[20] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[21] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[22] Walker at 1003.

that the claimant can perform.[23] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[24] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[25]

### IV. **SUMMARY OF THE RECORD EVIDENCE**

Plaintiff was born on November 19, 1958. (R. 47 & 279.) She was 40 years old at the onset of her alleged disability (*Id.*), and 42 years old when the ALJ rendered his decision in this case. (R. 16.) Plaintiff has a tenth grade education (R. 62), and has past relevant work experience as a cook. (R. 57.) Plaintiff's work as a cook required her to write, kneel, stoop, stand, walk and handle big objects for eight hours a day. (*Id.*) She would frequently lift up to 25 pounds and the heaviest weight she would lift was 50 pounds. (*Id.*)

In a disability report dated January 27, 2000, Plaintiff alleged an inability to work beginning on August 18 1999,[26] due to "injuries," and stated that her "left hand and arm hurts [*sic*] all the time and I cannot real [*sic*] bend my index finger." (R. 56.)

In his review of the record, including Plaintiff's testimony and the medical records maintained by several health care providers, the ALJ determined that Plaintiff suffers

---

[23] Wolfe at 1077-78.

[24] *See* Id.

[25] *See* Doughty at 1278 n.2.

[26] As noted above, Plaintiff's application reflects an earlier disability onset date of December 16, 1998. (R. 47.)

from a laceration and repair of her left index finger which constitutes a severe impairment, but does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

On August 17, 1998, Plaintiff presented to Dr. Stephanie Gonzalez of the Workers Health Clinic in Ocala, after suffering a laceration to her left hand index finger at work. (R. 91.) The laceration was sutured at the hospital and Plaintiff demonstrated a full range of motion in her finger joints. (*Id.*) Two days later, Plaintiff reported that she was doing better, but did experience some numbness in the area. (R. 90.) Gonzalez stated that Plaintiff was to return 9 days later for removal of her sutures and "probable full duty discharge at that time." (*Id.*) On the August 28, 1998 return visit for suture removal, Plaintiff reported that she was feeling better, and Gonzalez noted good healing with not signs of infection, swelling, or redness. (R. 89.) By September 4, 1998, her prognosis was "excellent." (R. 88.)

On October 2, 1998, her finger began to show signs of redness and erythema.[27] A small palpable nodule was found in the volar aspect[28] of the joint capsule, and the range of motion was decreased secondary to shrinkage of the extensor[29] tendon. An x-ray showed inflamation, but her prognosis was good. (*Id.*)

---

[27] An abnormal reddening of the skin, due to disease, poison, irritation, etc., as the redness caused by excessive exposure to the sun. 2-E Attorneys' Dictionary of Medicine 3827.

[28] Pertaining to, or involving, the palm of the hand or the sole of the foot. 6-V Attorneys' Dictionary of Medicine 2472.

[29] A muscle which extends or straightens a part, as a muscle which straightens a bent finger. 2-E Attorneys' Dictionary of Medicine 5188.

Plaintiff presented to Dr. Cynthia Harding, an orthopedic surgeon, in December of 1998. (R. 78). Harding also noted that Plaintiff sustained a laceration at the PIP joint.[30] Harding performed surgery in January of 1999, and then began hand therapy. (R. 78-79.) By April 1999, Harding returned Plaintiff to two-handed light duty status (R. 182), and by May 1999, Harding noted that Plaintiff was doing well status post lysis of adhesions.[31] (R. 79.)

In August 1999 - less than one year after the alleged disability onset date - Plaintiff complained about left index finger pain again, but explained that she had been riding her bike and "working with baby bottles." (R. 79.) A month later, Harding stated that Plaintiff's pain could be due to carpal tunnel syndrome, but she decided to send Plaintiff for a nerve conduction study to rule out the condition. (R. 80.) She kept Plaintiff on two-handed light duty, and gave Plaintiff a wrist brace. (R. 179.) The nerve conduction study was normal and there was no evidence of symptoms related to carpal tunnel syndrome. (*Id.*) Through July 2000, Plaintiff's left hand index finger numbness and range of motion were improving. (R. 81-82.)

The record contains two physical RFC assessments performed by two non-examining state agency physicians. (R. 155 & 163.) In a March 13, 2000 physical RFC assessment, Keith Holden, M.D., found some handling and fingering limitations, but

---

[30] PIP joint is the abbreviation for proximal interphalangeal joint which is located between the segment of the finger closest to the palm of the hand and the middle segment. 5-P Attorneys' Dictionary of Medicine 1945.

[31] Adhesions formed as a result of a previous operation. 5-S Attorneys' Dictionary of Medicine 1805. An adhesion is an abnormal union or growing together of parts which are normally separate, especially through inflammation or contact of denuded surfaces. Also, the abnormal union so formed. 1-A Attorneys' Dictionary of Medicine 2860.

concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, and stand, walk, and sit for a total of 6 hours in a work day. (R. 153.) In a July 14, 2000 physical RFC assessment, Eric C. Puestow, M.D., concurred with Holden, and specifically noted that Plaintiff "would be capable of greater function with continued treatment." (R. 168.)

## V. DISCUSSION

**A. The ALJ provided adequate reasons to reject Plaintiff's testimony about debilitating pain**

Pain is a non-exertional impairment.[32] Congress has determined that a claimant will not be considered disabled unless she furnishes medical and other evidence (*e.g.*, medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.[33] Pain alone can be disabling, even when its existence is unsupported by objective evidence,[34] although an individual's statements regarding pain do not provide conclusive evidence of a disability.[35] The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[36]

---

[32] Foote, 67 F.3d at 1559.

[33] 42 U.S.C. § 423(d)(5)(A).

[34] *See* Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

[35] 42 U.S.C. § 423(d)(5)(A).

[36] 20 C.F.R. § 404.1528.

An ALJ must apply the Eleventh Circuit's "pain standard" when, as here, a claimant attempts to establish a disability through her own testimony of pain or other subjective symptoms.[37] In order to establish a disability based on testimony of pain and other symptoms, the pain standard requires: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[38]

In the instant case, the ALJ applied the Eleventh Circuit's pain standard "threshold"[39] assessment to Plaintiff's complaints of pain. Although he did not cite the exact language of the standard, the ALJ's discussion and findings disclose that the standard was applied. Moreover, the ALJ articulated the same language regarding the subjective pain testimony that the Eleventh Circuit interpreted when initially establishing the pain standard.[40]

After applying the standard to the facts of this case, the ALJ determined that Plaintiff, indeed, met the standard. As to the first part of the pain standard, the ALJ found that Plaintiff suffered from a laceration and repair of the left hand index finger - an underlying medical condition. (R. 17 & 20.) Further, although he did not find objective

---

[37] Foote at 1560.

[38] Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) *quoting* Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).

[39] Marbury at 839.

[40] *See* Wilson at 1226.

10

medical evidence confirming the severity of the alleged pain arising from the foregoing medical condition (the second part of the standard), the ALJ *did* find that Plaintiff satisfied the third part of the standard by providing evidence that her medical conditions were of such a severity that they could reasonably be expected to produce some limitations. However, the ALJ qualified this determination by stating that "claimant's statements regarding the intensity and duration of her pain appear somewhat exaggerated and inconsistent with the objective findings of record." (R. 18.)

Such findings, at the very least, imply that the pain standard was satisfied. This implication is made more obvious by the ALJ's subsequent evaluation of the credibility of Plaintiff's complaints of disabling pain - an evaluation which is jettisoned where the pain standard has not been met in the first place.[41]

With respect to Plaintiff's testimony about disabling pain during her period of insured status, the ALJ stated that the "allegations regarding her limitations are not totally credible and consistent with the objective findings of record." (R. 20.) The Eleventh Circuit instructs that where an ALJ discredits a claimant's testimony about subjective complaints, he or she must articulate explicit and adequate reasons for doing so,[42] or the record must be obvious as to the credibility finding.[43] While an adequate credibility finding need not cite "particular phrases or formulations [...] broad findings that a claimant lacked credibility and could return to her past work alone are not enough

---

[41] *See* Marbury at 839 ("The Secretary must consider a claimant's subjective testimony of pain if he finds [that the pain standard is satisfied.]")

[42] Wilson at 1225.

[43] Foote at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

to enable a court to conclude that the ALJ considered her medical condition as a whole."[44] As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.[45] A Court will not disturb a clearly articulated credibility finding supported by substantial evidence of record.[46]

Here, the Court finds that the ALJ *did* articulate explicit and adequate reasons to discredit Plaintiff's testimony about disabling pain. First, and most importantly, he relied on the opinions and diagnoses furnished by Dr. Cynthia Harding, an orthopedist who treated Plaintiff's hand and finger over the course of two years. Such reliance was justifiable, as Harding's opinions on the nature and severity of a claimant's impairments *must be given controlling weight* if, like in this case, the opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques, and are not inconsistent with the other substantial evidence in the record.[47] Plaintiff herself advances no argument as to the reliability of Harding's opinions or diagnostic techniques and also offers no evidence other than her self-serving testimony to rebut Harding's opinions as being inconsistent with the medical records in general.

The ALJ duly noted that, on a number of occasions, Harding commented that Plaintiff was capable of returning to two-handed light duty. (R. 17, 47, 179 & 182.) He

---

[44] Foote at 1562-1563.

[45] Id. at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

[46] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[47] 20 C.F.R. § 404.1527(d)(2).

also discerned that the nerve-conduction studies carried out at the direction of Harding revealed normal results. (*Id.*) Finally, the ALJ recognized Harding's scrupulously-kept records which revealed continued improvement in Plaintiff's pain and range of motion throughout her treatment in 2000.

In addition, the ALJ properly considered Plaintiff's own account of her daily activities as a factor for discounting her allegations of pain. (R. 18.) Although she complained that she was in pain "all the time," Plaintiff herself testified that she drives an automobile, does the cooking in her household, works in the garden, likes to draw, and rides her bicycle. (*Id.*) Based on the evidence of record, it was reasonable for the ALJ to conclude that Plaintiff would not be capable of performing such activities if she suffered from the type of pain about which she testified.

It follows that the ALJ explicitly and adequately articulated reasons to discredit Plaintiff's complaints of disabling pain during her insured status, and all of the reasons the ALJ used to discredit such complaints are amply supported by the record. Because the task of choosing between conflicting evidence is one that is peculiarly suited to the fact finder,[48] and because there is substantial evidence that supports the ALJ's decision to discredit Plaintiff's complaints of debilitating pain, the Court will not disturb the ALJ's determination that Plaintiff's pain was not so severe as to preclude her from performing light work.

---

[48] Hand v. Heckler, 761 F. 2d 1545,1549 (11th Cir. 1985).

## VI.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

**IN CHAMBERS** in Ocala, Florida, this 24th day of June, 2005.

*Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

Copies to:
The Honorable Wm. Terrell Hodges,
Senior United States District Judge

Counsel of Record